Beth S. Rose, Esq.
Vincent Lodato, Esq.
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Facsimile: (973) 643-6500

*Attorneys for Defendants*
*Integra LifeSciences Holdings Corporation*
*and Integra LifeSciences Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHIRLEY SLOMINSKI,** | ) |
| | ) **Civil Action No:** _____ |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **INTEGRA LIFESCIENCES HOLDINGS** | ) |
| **CORPORATION, INTEGRA** | ) |
| **LIFESCIENCES CORPORATION, and** | ) |
| **ABC CORPORATIONS 1-10,** | ) |
| | ) |
| **Defendants.** | ) |

## NOTICE OF REMOVAL

Defendants Integra LifeSciences Holdings Corporation and Integra LifeSciences Corporation (collectively "Integra") give notice of the removal of this civil action from the New Jersey Superior Court, Law Division, Middlesex County, to the United States District Court for the District of New Jersey, Trenton Vicinage pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Diversity jurisdiction exists because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

## I.      INTRODUCTION

This lawsuit involves claims that Plaintiff Shirley Slominski suffered personal injuries from a wrist implant system that was implanted in her wrist in 2008.  Plaintiff alleges that the

wrist implant system was defective, which required her to undergo multiple surgeries, revisions and reconstructions and ultimately, removal of the medical device in June 2018. The Complaint alleges that Defendant Integra manufactured, produced, designed, and distributed the wrist implant system.  The Complaint asserts claims under the New Jersey Product Liability Act, the New Jersey Consumer Fraud Act, and for breach of implied and express warranties.   On February 9, 2021, Plaintiff filed this civil action captioned *Shirley Slominski v. Integra LifeSciences Holdings Corporation, et al.*, Docket No. MID-L-838-21 ("State Court Action") in the New Jersey Superior Court, Law Division, Middlesex County.  A copy of the Complaint is attached hereto as Exhibit A.  To date, Integra has not been served with the Summons and Complaint in the State Court Action.

## II.    THIS CASE IS REMOVABLE UNDER DIVERSITY JURISDICTION

This action is removable under 28 U.S.C. § 1441 because this Court would have had original jurisdiction under 28 U.S.C. § 1332 had Plaintiff filed this action initially in federal court.  Plaintiff and Integra are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.    Complete diversity exists

Plaintiff is a resident of North Carolina.  (Compl. ¶ 1).  The defendants in this action are corporations. A corporation is a citizen of its state of incorporation and of the state where it has its principal place of business.   28 U.S.C. § 1332(c)(1).   Defendant Integra LifeSciences Holdings Corporation is a corporation organized under the laws of the state of Delaware with its principal place of business located at 1100 Campus Road, Princeton, New Jersey.   (Ex. B, Compl. ¶ 2).  Defendant Integra LifeSciences Corporation is also a corporation organized under the laws of the state of Delaware with its principal place of business located at 1100 Campus

Road, Princeton, New Jersey.  (Ex. C, Compl. ¶ 2).  Plaintiff's inclusion of fictitious defendants in the Complaint does not destroy diversity jurisdiction, as there is no allegation that any of these fictitious entities are citizens of the same state as Plaintiff.  *See Johnson v. Rite Aid*, 2011 U.S. Dist. LEXIS 69530, at *4 (D.N.J. Jun. 28, 2011) (purely fictitious defendants named in the Complaint should be disregarded for purposes of determining diversity jurisdiction). Because Plaintiff and Integra are citizens of different states, complete diversity exists.

**B.     The amount in controversy exceeds $75,000**

Under 28 U.S.C. § 1446(c)(2)(B), removal is appropriate if the court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000.  In personal injury cases, where plaintiff has not averred a specific damages amount in the Complaint, the $75,000 jurisdictional amount is met unless it is a legal certainty that plaintiff cannot recover the jurisdictional minimum.  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).  Here, the Complaint states that due to alleged defects in the wrist implant device, Plaintiff underwent multiple surgeries, revisions and reconstructions, including a surgery to remove the implant in June 2018.  (Compl. ¶ 13).  The Complaint further alleges that "Plaintiff has suffered, and will continue to suffer, permanent physical injury, pain and mental anguish, severe scarring and disfigurement, lost wages and earning capacity, and has incurred substantial medical bills and other expenses."  (*Id.* at ¶ 24).

Although the Complaint does not demand a specific dollar amount in damages, the preponderance of evidence demonstrates that the matter in controversy likely exceeds $75,000. Given the allegations in the Complaint that Plaintiff sustained permanent injuries and scarring, lost wages and earnings capacity, and substantial medical bills, it is not a legal certainty that Plaintiff's recovery will not exceed $75,000.  *See Morales v. Family Dollar, Inc.*, 2018 U.S. Dist.

LEXIS 130030, at *8 (D.N.J. Aug. 2, 2018) (there is no legal certainty that plaintiff cannot recover the jurisdictional minimum where plaintiff alleges severe and permanent injuries); *Amadu v. Bradshaw*, 2016 U.S. Dist. LEXIS 89293, at *9-10 (D.N.J. July 11, 2016) (allegations in the Complaint that the plaintiff sustained severe personal injuries which interfered with his daily activities and required ongoing medical treatment is sufficient to demonstrate that the amount in controversy is likely to exceed $75,000); *Dugan v. Acme Markets, Inc.*, 2016 U.S. Dist. LEXIS 6838, at *3 (D.N.J. Jan. 21, 2016) ("personal injury cases alleging severe and permanent injuries will be removable absent proof to a legal certainty that the amount in controversy cannot exceed $75,000."). Because it cannot be said to a legal certainty that Plaintiff's recovery will not exceed the jurisdictional minimum, removal is appropriate.

### III.    FORUM DEFENDANT RULE DOES NOT APPLY

The forum defendant rule, 28 U.S.C. § 1441(b)(2), provides that a diversity case "may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." In *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018), the Third Circuit confirmed that the forum defendant rule "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." Here, although Integra is citizen of New Jersey, Integra has not yet been served with the Summons and Complaint in this action. Accordingly, the forum defendant rule does not preclude Integra from removing this action. *See Moore v. Diversified, Inc.*, 2021 U.S. Dist. LEXIS 17062, at *5-6 (D.N.J. Jan. 12, 2021) ("an exception to the form defendant rule arises when an in-state defendant removes an action prior to being properly joined and served – this so-called snap removal").

## IV.    TIMELINESS OF REMOVAL

Under 28 U.S.C. § 1446(b)(1), the notice of removal must be filed within 30 days after the defendant receives the initial pleading through service or otherwise.  As discussed, Integra has not yet been served with the Summons and Complaint in the State Court Action.  Plaintiff's counsel e-mailed Integra's counsel a courtesy copy of the filed Complaint in the State Court Action on February 9, 2021.  Because this Notice of Removal has been filed within 30 days of Integra's counsel receiving a courtesy copy of the Complaint, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

## V.    VENUE OF REMOVED ACTION

The United States District Court for the District of New Jersey, Trenton Vicinage is the United States District Court and vicinage embracing the New Jersey Superior Court, Middlesex County where this action was filed and is pending.  Therefore, venue is proper in the United States District Court for the District of New Jersey, Trenton Vicinage under 28 U.S.C. § 1441(a).

## VI.    NOTICE TO THE STATE COURT

A copy of this Notice of Removal is being contemporaneously served on all parties and filed with the New Jersey Superior Court, Law Division, Middlesex County, where this case was originally filed and is currently pending.

WHEREFORE, Integra respectfully requests that this action be removed to the United States District Court for the District of New Jersey, Trenton Vicinage and that no further proceedings be held in the New Jersey Superior Court, Law Division, Middlesex County.

Dated: February 12, 2021                            Respectfully submitted,

                                                                    *s/ Beth S. Rose*
                                                                    Beth S. Rose
                                                                    Vincent Lodato
                                                                    SILLS CUMMIS & GROSS P.C.

One Riverfront Plaza
Newark, NJ 07102
Telephone: (973)643-7000
Facsimile: (973)643-6500
brose@sillscummis.com
vlodato@sillscummis.com

*Attorneys for Defendants*
*Integra LifeSciences Holdings Corporation*
*and Integra LifeSciences Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2021, I caused a copy of this Notice of Removal to be served via e-mail on the following counsel for Plaintiff:

Stefanie Colella-Walsh, Esq.
Stark & Stark
993 Lenox Drive
Lawrenceville, NJ 08648

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.


*s/ Beth S. Rose*
BETH S. ROSE

Dated:  February 12, 2021

EXHIBIT A

**STARK & STARK, P.C.**
Stefanie Colella-Walsh - Attorney ID # 012602007
Martin P. Schrama - Attorney ID # 039581997
993 Lenox Drive, Building Two
Lawrenceville, New Jersey 08648
Phone: (609) 896-9060; Fax: (609) 896-0629
Email: scw@stark-stark.com
         mps@stark-stark.com

*Attorneys for Plaintiff*

|  |  |
|---|---|
| SHIRLEY SLOMINSKI, <br><br>              Plaintiff, <br><br> v. <br><br> INTEGRA LIFESCIENCES HOLDINGS CORPORATION, INTEGRA LIFESCIENCES CORPORATION, and ABC CORPORATIONS 1-10, <br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> MIDDLESEX COUNTY <br><br> Docket No.: <br><br> <u>**CIVIL ACTION**</u> <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## PARTIES

1.       Plaintiff, Shirley Slominski ("Plaintiff"), is a former resident of New Jersey, who now resides at 138 Bellwood Circle, Sunset Beach, North Carolina.

2.       Integra Lifesciences Holdings Corporation and Integra Lifesciences Corporation (collectively referred to as "Integra") share headquarters and principal places of business at 1100 Campus Road, Plainsboro, Middlesex County, New Jersey.

3.       ABC Corporations 1-10 (along with Integra, collectively referred to as "Defendants") are any other entities involved in the design, development, licensing, manufacture, marketing, sales or distribution of the wrist implant system in question, or the components of that system, utilized to treat Plaintiff.

4814-2521-4683, v. 2

4.      Defendants include any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

5.      At all times alleged herein, Defendants conducted regular sustained business in New Jersey and have been residents of Middlesex County, New Jersey.

6.      By agreement of the parties, the Statutes of Limitations for all claims against Defendants was tolled through and including February 10, 2021.

## FACTS

7.      Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell products that are utilized to treat orthopedic injuries with medical device implants, out of Defendants' Plainsboro, New Jersey, headquarters.

8.      Defendants designed, researched, developed, manufactured, tested, marketed, advertised, promoted, distributed, and sold an implanted surgical device system known as the Integra Universal2 Total Wrist Implant ("Universal2").

9.      The Universal2 was marketed, sold and warranted as a safe and effective treatment for painful, arthritic and/or damaged wrist joints, purporting to treat these conditions through surgical replacement of the wrist joint with a prosthesis.

10.     Defendants were responsible for the research, design, development, testing, manufacture, production, marketing, promotion, distribution, and sale of the Universal2, including providing the warnings and instructions concerning the product.

11.     Defendants developed, manufactured, advertised, promoted, marketed, sold and/or distributed the Universal2 throughout the United States, including within the State of New Jersey

2

4814-2521-4683, v. 2

and specifically including to Plaintiff's implanting physician or their practice group, or to the hospital where the Defendants' wrist replacement system was utilized and implanted.

12.     In March 2008, Plaintiff had a Universal2 implanted via total wrist arthroplasty surgery performed at the Englewood Hospital and Medical Center, located in Englewood, New Jersey. Upon information and belief, the Universal2 was utilized in the manner for which it was designed, marketed and sold, and there is no indication that Plaintiff's physicians or her other healthcare providers failed to meet any applicable standard of care in the use of the Universal2.

13.     Subsequent to implantation, Plaintiff was forced to undergo multiple surgeries, revisions and reconstructions as a direct result of the defects in the Universal2. Eventually finding that the defective Universal2 had completely failed and that components of the Universal2 had broken off inside of Plaintiff, and caused multiple complications including severe metallosis, the defective Universal2 had to be removed in June 2018.

14.     Defendants knew that the Universal2, the individual components of the Universal2, the warnings and/or the surgical procedure utilized for implant of the device, were defective. Defendants also knew that the Universal2 was not safe for the patients for whom they were implanted using the recommended surgical technique.

15.     Defendants did not fully and/or adequately test the Universal2. The Universal2 product labeling and product information failed to contain adequate information, instructions, and warnings. The Universal2 was defectively designed and manufactured and failed at a higher rate than other such devices.

16.     Defendants representations regarding the performance of the Universal2, including, but not limited to, the consistency of performance, safety and reliability, were untrue as set forth in the published literature and adverse event reports. Defendants failed to disclose to physicians,

4814-2521-4683, v. 2

patients or Plaintiff that the Universal2 was subject to causing the injuries herein described. Defendants failed to include in its literature and intentionally omitted any reference to the known adverse events concerning the reports of injuries resulting from implant of the Universal2.

17.     Defendants made assurances of Universal2 safety through direct promotional contact by Defendants' sales representatives and distributors, through word-of-mouth from Defendant's physician/technical consultants, and/or through industry targeted promotional materials. Defendants represented to Plaintiff, her physicians, her healthcare providers and the general public that their Universal2 was a safe and effective product for its intended use.

18.     The Universal2 was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing, and despite Defendants' knowledge of product failure and serious adverse events. As Defendants are aware, studies, research and medical data revealed a high failure and complication rate in total wrist arthroplasties, especially the Universal2, and particularly in those individuals with rheumatoid arthritis. All of the foregoing information was known to Defendants prior to implantation of the Universal2 in Plaintiff, and throughout her treatment.

19.     Defendants suppressed the foregoing information and failed to accurately and completely disseminate or share this and other critical information with healthcare providers or patients. Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Universal2.

20.     Defendants' Universal2 was defectively designed and/or manufactured, was not reasonably safe for its intended use, and the risks of the design outweighed any potential benefits associated with the design. As a result of the defective design and/or manufacture of the Universal2, there was an unreasonable risk of injuries and complications.

4814-2521-4683, v. 2

21.    A defectively designed, manufactured, and marketed Universal2 left the hands of Defendants in its defective condition, delivered into the stream of commerce. As a direct and proximate result of Defendants' defective design, manufacture, marketing, distribution, and/or sale of the Universal2, and placing that defective product into the stream of commerce, Plaintiff has been injured and damaged. The manufacturing and design defects associated with the Universal2 were directly and proximately related to the injuries suffered by Plaintiff.

22.    Neither Plaintiff, her physicians nor her other healthcare providers were adequately warned or informed by Defendants of the defective and dangerous nature of the Universal2. Neither Plaintiff, her physicians nor her other healthcare providers were adequately warned or informed by Defendants of the risks associated with the Universal2 or the frequency, severity, and/or duration of such risks.

23.    The Universal2 implanted in Plaintiff failed to reasonably perform as intended. The device caused serious injury, necessitated (and will continue to necessitate) additional invasive surgery and other treatment to repair the condition that the Universal2 exacerbated, and was initially implanted to treat.

24.    Plaintiff has suffered, and will continue to suffer, permanent physical injury, pain and mental anguish, severe scarring and disfigurement, lost wages and earning capacity, and has incurred substantial medical bills and other expenses, as well as other known and unknown damages, resulting from the defective and dangerous condition of the Universal2 and from Defendants' defective and inadequate warnings about the risks associated with the Universal2.

**CAUSES OF ACTION**

**COUNT I: PRODUCTS LIABILITY ACT – STRICT PRODUCTS LIABILITY –
DEFECTIVE DESIGN (N.J.S.A. 2A:58C-1, et seq.)**

5

25.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

26.     At the time the Universal2 was implanted in Plaintiff, the Universal2 was defectively designed. There was an unreasonable risk that the Universal2 would not perform safely and effectively for the purposes for which it was intended. Defendants failed to design against such dangers, and failed to provide adequate warnings and instructions concerning these risks.

27.     Defendants expected and intended the Universal2 to reach users, such as Plaintiff, in the condition in which the Universal2 was sold.

28.     The implantation of Universal2 in Plaintiff was medically reasonable, and was a type of use that Defendants intended and foresaw when Defendants designed, manufactured and sold the Universal2.

29.     The risks of the Universal2 design significantly outweigh any benefits that Defendants contend could be associated with that design.

30.     The Universal2 provided no benefit, while substantially increasing the risks and injuries to the patient. The appropriate treatment for complications associated with Universal2 involves additional invasive surgeries to revise and ultimately remove the failed Universal2 from the body, and other additional treatment, thus eliminating any purported benefit that the Universal2 was intended to provide to the patient. The Universal2 rendered the very condition that the Universal2 was intended to repair to become much more severe.

31.     At the time the Universal2 was implanted in Plaintiff, the warnings and instructions provided by Defendants for the Universal2 were inadequate and defective. There was an unreasonable risk that the Universal2 would not perform safely and effectively for the purposes

6

for which it was intended, and Defendants failed to design and/or manufacture against such dangers, and failed to provide adequate warnings and instructions concerning these risks.

32.    At the time the Universal2 was implanted in Plaintiff, there were safer feasible alternative designs for such products that would have successfully treated Plaintiff and prevented the injuries Plaintiff suffered.

33.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Universal2, Plaintiff suffered injuries and damages.

34.    Defendants are strictly liable in tort to Plaintiff for their wrongful conduct pursuant to the New Jersey Products Liability Act, <u>N.J.S.A.</u> 2A:58C-1 <u>et seq</u>.

## <u>COUNT II: PRODUCTS LIABILITY ACT – STRICT PRODUCTS LIABILITY – FAILURE TO WARN (N.J.S.A. 2A:58C-1, et seq.)</u>

35.    Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

36.    At the time the Universal2 was implanted in Plaintiff, the warnings and instructions Defendants provided for the Universal2 were inadequate and defective. There was an unreasonable risk that the Universal2 would not perform safely and effectively for the purposes for which it was intended. Defendants failed to design and/or manufacture against such dangers, and failed to provide adequate warnings and instructions concerning these risks.

37.    Defendants expected and intended the Universal2 to reach users, such as Plaintiff, in the condition in which the Universal2 was sold.

38.    Plaintiff and her physicians were unaware of the defects and dangers of Universal2, and were unaware of the frequency, severity, and duration of the defects and risks associated with the Universal2.

4814-2521-4683, v. 2

39.     Defendants' labeling and instructions for use provided with the Universal2 expressly understated and misstated the risks known to be associated specifically with the Universal2. Defendants provided no sufficient warning to Plaintiff, patients, physicians or healthcare providers about the risks or increased risks specifically associated with the design of the Universal2.

40.     Defendants failed to adequately warn Plaintiff, patients, physicians or healthcare providers of numerous risks which Defendants knew or should have known were associated with the Universal2. Defendants failed to adequately warn Plaintiff, patients, physicians or healthcare providers about the necessity for invasive surgical intervention in the event of complications. Defendants also failed to train physicians or healthcare providers on how to properly treat such complications when they occurred.

41.     Defendants represented to Plaintiff, patients, physicians and healthcare providers, including Plaintiff's own physicians and healthcare providers, that the Universal2 was properly suited for its intended purpose. With respect to the complications listed in their warnings, Defendants provided no proper information or warning regarding the frequency, severity and duration of those complications, although the complications associated with Universal2 were more frequent and severe, and lasted longer than those with safer feasible alternative treatments.

42.     If Plaintiff, her physicians or her healthcare providers had been properly warned of the defects and dangers of Universal2, and of the frequency, severity and duration of the risks associated with the Universal2, Plaintiff would not have consented to allow the Universal2 to be implanted in her body, and her physicians or her healthcare providers would not have implanted the Universal2 in Plaintiff.

4814-2521-4683, v. 2

43.     As a direct and proximate result of the inadequate and defective warnings and instructions, Plaintiff suffered injuries and damages.

44.     Defendants are strictly liable in tort to Plaintiff for their wrongful conduct pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 et seq.

## COUNT III: PRODUCT LIABILITY ACT – STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT (N.J.S.A. 2A:58C-1, et seq.)

45.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

46.     Defendants designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled and/or sold the Universal2, in a condition which rendered it unreasonably dangerous due to it propensity to result in early failure of the device. Defendants' Universal2 was unreasonably dangerous in construction or composition.

47.     The Universal2 contained a manufacturing defect when it left the possession of Defendants. Defendants knew or should have known that the Universal2 could fail in patients, thereby giving rise to pain and suffering, debilitation and the need for revision surgery to replace the device with the attendant risk of complications and death from such further surgery. Notwithstanding, Defendants continued to market Universal2 as a safe and effective product.

48.     The manufacturing defects in the Universal2 were a producing cause of Plaintiff's injuries and damages.

49.     Defendants are strictly liable in tort to Plaintiff for their wrongful conduct pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 et seq.

## COUNT IV: BREACH OF IMPLIED WARRANTY

50.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

9

51.     At the time Defendants designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed the Universal2 for use by Plaintiff, they knew of the intended use of the Universal2, and impliedly warranted their Universal2 to be of merchantable quality, and safe and fit for its intended use.

52.     When the Universal2 was implanted in Plaintiff, the Universal2 was being used for the ordinary purposes for which it was intended.

53.     Plaintiff, individually and/or by and through her physicians or her healthcare providers, relied upon Defendants' implied warranties of merchantability in consenting to have the Universal2 implanted in her.

54.     Contrary to such implied warranties, the Universal2 was not of merchantable quality, and was not safe and/or was not fit for its intended use. The Universal2 was unreasonably dangerous and unfit for the ordinary purposes for which it was used. Defendants failed to warn of known or reasonably scientifically knowable defects in the Universal2.

55.     As a direct and proximate result of the conduct of Defendants, Plaintiff suffered the injuries and damages.

## COUNT V: BREACH OF EXPRESS WARRANTY

56.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

57.     Defendants advertised, labeled, marketed and promoted the Universal2, representing the quality to physicians, healthcare providers, the FDA, Plaintiff, and the public in such a way as to induce its purchase or use, thereby making an express warranty that the Universal2 would conform to the representations. More specifically, Defendants represented that the Universal2 was safe and effective, that it was safe and effective for use by individuals such as Plaintiff and that it was safe and effective to treat Plaintiff's condition.

4814-2521-4683, v. 2

58.     The representations, as set forth above, contained or constituted affirmations of fact or promises made by a seller to a buyer which related to goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

59.     The Universal2 device did not conform to the representations made by Defendants, in that the Universal2 was not safe and effective, and was not safe and effective for use by individuals such as Plaintiff.

60.     At all relevant times, Plaintiff used the Universal2 for the purpose and in the manner intended by Defendants.

61.     Defendants breached the express warranty provided with the Universal2.

62.     Plaintiff, her physicians and her healthcare providers, by the use of reasonable care, could not have discovered the breached warranty and realized the danger posed by the Universal2.

63.     The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

64.     Within a reasonable time after Plaintiff knew or should have known of the failure of their Universal2, Plaintiff gave notice to Defendants of such failure.

65.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and distribution of Universal2 and, Plaintiff was implanted with Universal2 and suffered damages.

## <u>COUNT VI: PUNITIVE DAMAGES</u>

66.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

4814-2521-4683, v. 2

67.     Defendants failed to adequately test and study the Universal2 to determine and ensure that the Universal2 was safe and effective before releasing it for sale for human implantation.

68.     Defendants continued to manufacture and sell Universal2 after obtaining knowledge and information that the Universal2 was defective and unreasonably unsafe.

69.     Defendants were aware of the probable consequences of implantation of the dangerous and defective Universal2, including the risk of failure and serious injuries, such as those suffered by Plaintiff. Defendants willfully and recklessly failed to avoid those consequences, and in doing so, acted intentionally, maliciously and recklessly with regard to the safety of those persons who might foreseeably have been harmed by the Universal2, including Plaintiff, justifying the imposition of punitive damages.

## COUNT VII: CONSUMER FRAUD ACT (N.J.S.A. 56:8-1, et seq.)

70.     Plaintiff incorporates by reference the allegations in all prior paragraphs and further alleges as follows.

71.     Defendants engaged in one or more acts and omissions which are an unconscionable commercial practice, deception, fraud, false pretense, false promise and/or misrepresentation. Defendants thereby violated the New Jersey Consumer Fraud Act.

72.     Plaintiff is a "person" and the Universal2 constitutes "merchandise" within the meaning of the New Jersey Consumer Fraud Act. Defendants received valuable consideration from the sale of the Universal2.

73.     Defendants committed material misrepresentations and knowing omissions regarding Plaintiff, her physicians, her healthcare providers and the general public, in that

Defendants misrepresented or knowingly omitted the facts concerning the Universal2 and its individual components, including, but not limited to the fact that:

- Defendants did not fully and/or adequately test the Universal2;

- The Universal2 was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing, as well as subject to product failure and serious adverse events;

- The Universal2 was defectively designed and/or manufactured, was not reasonably safe for its intended use and was not effective for its intended use; and

- The Universal2 was associated with unreasonable risks of injury, was shown to be dangerous and ineffective, and failed at a higher rate than other such devices.

74. Defendants made these misrepresentations with full knowledge of their falsity and also knowingly concealed, suppressed, and/or omitted said material facts, in order to induce reliance on the part of Plaintiff, her physicians and her healthcare providers.

75. Plaintiff, her physicians and her healthcare providers did reasonably and justifiably rely on these misrepresentations and omissions and, as a direct and proximate result of the aforesaid violations by Defendants, Plaintiff suffered an ascertainable loss and has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and an award of damages against Defendants, jointly and severally, as follows:

a. special damages, to include past and future medical and incidental expenses;
b. past and future loss of earnings and/or earning capacity;
c. past and future general damages, to include pain and suffering, emotional distress and mental anguish;
d. pre-judgment and post-judgment interest;
e. punitive damages;
f. treble damages, costs and attorneys' fees; and
g. any other legal and equitable relief that the Court deems necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

## NOTICE OF OTHER ACTIONS PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy herein is not the subject of any other court proceeding or arbitration and no other court proceeding or arbitration is contemplated. To the best of my knowledge and belief, there are no other known parties who should be joined at this time.

## CERTIFICATION PURSUANT TO R. 1:38-7(c)

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents in the future in accordance with R. 1:38-8(b).

## TRIAL COUNSEL DESIGNATION

Please take notice that pursuant to the provisions of R. 4:25-4, STEFANIE COLELLA-WALSH, ESQUIRE, is hereby designated as trial counsel on behalf of Plaintiff.

STARK & STARK, P.C.
Attorneys for Plaintiff


 s/ Stefanie Colella-Walsh
_____
STEFANIE COLELLA-WALSH, ESQ.
MARTIN P. SCHRAMA, ESQ.


Dated: 2/9/2021

14

4814-2521-4683, v. 2

EXHIBIT B

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

| Entity Details |
| :---: |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **2199700** | Incorporation Date /<br>Formation Date: | **6/19/1989**<br>(mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **INTEGRA LIFESCIENCES HOLDINGS CORPORATION** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **CORPORATION SERVICE COMPANY** | | |
|---|---|---|---|
| Address: | **251 LITTLE FALLS DRIVE** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **302-636-5401** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

EXHIBIT C

Department of State: Division of Corporations

Allowable Characters

HOME

| | Entity Details |
|---|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 2363821 | Incorporation Date / Formation Date: | 1/1/1994 (mm/dd/yyyy) |
| Entity Name: | INTEGRA LIFESCIENCES CORPORATION | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 251 LITTLE FALLS DRIVE | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]          [New Entity Search]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov